# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CARRYN A. STEINBECK**
        **Plaintiff,**

    **v.**                                                      **Case No. 17-C-1760**

**NANCY A. BERRYHILL,**
**Acting Commissioner of the Social Security Administration**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff Carryn Steinbeck applied for social security disability benefits, alleging that she could no longer work due to a variety of impairments, including fibromyalgia, rheumatoid arthritis, plantar fasciitis, depression, and anxiety/panic disorder. Social security regulations set forth a sequential, five-step test for determining disability:

(1) Is the claimant currently working? If so, she is not disabled.

(2) If not, does the claimant have a severe medically determinable physical or mental impairment? If not, the claimant is not disabled.

(3) If so, do any of the claimant's impairments meet or equal one of the presumptively disabling impairments set forth in the agency's Listings? If so, the claimant is disabled.

(4) If not, does the claimant retain the residual functional capacity ("RFC") to perform her past relevant work? If so, she is not disabled.

(5) If not, can the claimant, based on her RFC, age, education, and work experience make an adjustment to other work? If so, she is not disabled. If not, she is disabled.

See 20 C.F.R. § 404.1520(a)(4).

The Administrative Law Judge ("ALJ") assigned to this case concluded that while plaintiff, then unemployed, suffered from a number of severe impairments, none qualified as

presumptively disabling under the agency's regulations, and that despite her impairments plaintiff remained capable of performing a range of sedentary work. The ALJ further concluded that plaintiff could not, given this RFC, perform her past work; however, accepting the testimony of a vocational expert ("VE"), he found that she could work as a "document specialist" or "system surveillance monitor."

Plaintiff seeks judicial review of the ALJ's decision. A reviewing court must determine whether the ALJ's findings are supported by "substantial evidence" – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Walker v. Berryhill, 900 F.3d 479, 482 (7th Cir. 2018). To satisfy this standard, the ALJ must build an accurate and logical bridge from the evidence to his conclusion and may not ignore evidence that undercuts his conclusion. Spicher v. Berryhill, 898 F.3d 754, 757 (7th Cir. 2018). "A decision that lacks adequate discussion of the issues will be remanded." Moore v. Colvin, 743 F.3d 1118, 1121 (7th Cir. 2014).

## I.

Plaintiff first argues that the ALJ erred at step three by failing to consider Listing 14.09 (inflammatory arthritis). See SSR 12-2p, 2012 SSR LEXIS 1, at *17 (indicating that fibromyalgia may medically equal Listing 14.09D). I agree. While the ALJ discussed a number of other Listings, he failed to even mention 14.09 (Tr. at 19-22), despite the fact that plaintiff's counsel specifically argued this Listing at the hearing (Tr. at 42).[1] "In considering whether a

---

[1]The Commissioner contends that the ALJ's Listing analysis more than surpassed the minimum articulation requirements, see Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004), as he discussed in some detail why plaintiff did not meet or equal various other Listings. However, the Commissioner cites no authority for the proposition that discussing some potentially applicable Listings excuses the ALJ from considering others.

2

claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004). The absence of such a discussion "frustrates any attempt at judicial review," particularly where, as here, a specific Listing claim was made at the administrative level. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2003). The ALJ discussed some of the medical evidence related to plaintiff's arthritis (Tr. at 19-20, 23-24), but this discussion failed to build the logical bridge necessary for judicial review of the step three determination. See Lantz v. Berryhill, No. 1:17-CV-394-TLS, 2018 U.S. Dist. LEXIS 144863, at *10-11 (N.D. Ind. Aug. 24, 2018).

The Commissioner argues that the error was harmless, as plaintiff fails to establish that she meets or equals Listing 14.09. See Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999) (noting that the claimant bears the burden of showing that her condition meets or equals all of the criteria of a Listing). Plaintiff cites record evidence pertaining to the criteria under Listing 14.09A and 14.09D (Pl.'s Br. at 12-13); the Commissioner argues this evidence is insufficient (Def.'s Br. at 4-6). It is the job of the ALJ, not the reviewing court, to weigh conflicting evidence, see, e.g., Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990), and I cannot say with "great confidence" that remanding for consideration of this Listing would be a waste of time, see, e.g., Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010). Cf. Knox v. Astrue, 327 Fed. Appx. 652, 655 (7th Cir. 2009) (finding step three error harmless where the claimant failed to present any medical evidence supporting the position that his impairments meet or equaled a particular listing). Further, a "finding of medical equivalence requires an expert's opinion on the issue," Minnick v. Colvin, 775 F.3d 929, 935 (7th Cir. 2015), and in the present case it appears the agency consultants did not consider this issue. The matter must be remanded for

3

consideration of Listing 14.09.

**II.**

Plaintiff next argues that the ALJ failed to cite sufficient medical support for the RFC determination. "[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide." Thomas v. Colvin, 745 F.3d 802, 808 (7th Cir. 2014). Accordingly, the ALJ was not required to rely on a particular medical opinion in determining the limitations contained in the RFC. See Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007) ("As we have stated previously, an ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians."). Nor does an ALJ "play doctor" by evaluating and weighing the medical evidence. See Moreno v. Berryhill, No. 17-1954, 2018 U.S. App. LEXIS 9296, at *1 (7th Cir. Apr. 13, 2018) (excising from previous opinion the statement: "We have made clear, however, that ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions."). Plaintiff contends that the ALJ should have weighed the evidence regarding her physical impairments differently (Pl.'s Br. at 15-18), but a reviewing court will not re-weigh the evidence, resolve conflicts, or substitute its judgment for that of the Commissioner. E.g., McKinzey v. Astrue, 641 F.3d 884, 889 (7th Cir. 2011). Plaintiff also fails to explain how the ALJ's mental RFC failed to accommodate the limitations recognized by the consultative examiner, Dr. Schinke. (Pl.'s Br. at 19-20.) This is not a case in which the ALJ accounted for concentration problems merely by limiting the claimant to simple tasks. See O'Connor-Spinner v. Astrue, 627 F.3d 614, 619-20 (7th Cir. 2010). Rather, the ALJ included a number of limitations designed to accommodate plaintiff's issues with concentration, work stress, adaptation to changes, and panic attacks. (Tr. 22-23, 576-77.)

4

The ALJ did err, however, in failing to consider the opinion of plaintiff's podiatrist, Dr. Sheridan. (Tr. at 808-09). "An ALJ must consider all medical opinions in the record." Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013). The Commissioner again argues harmless error, indicating that Dr. Sheridan's report was not materially different from the ALJ's RFC assessment. However, Dr. Sheridan's report endorsed a standing/walking tolerance of just one hour, while the ALJ found that plaintiff could stand and/or walk two hours per day. (Tr. at 22.) See also SSR 83-10, 1983 SSR LEXIS 30, at *13 (noting that sedentary work generally requires walking/standing two hours per day). Dr. Sheridan further indicated, in a treatment note, that plaintiff "is unable to work at this point because of her significant systemic and numerous joint involvements." (Tr. at 910.) The matter must be remanded for consideration of his opinions.

**III.**

Plaintiff further argues that the ALJ erred in evaluating her testimony regarding the nature and extent of her symptoms and limitations. See SSR 16-3p, 2016 SSR LEXIS 4. While the court reviews an ALJ's credibility determination deferentially, reversing only if it is "patently wrong," see, e.g., Gerstner v. Berryhill, 879 F.3d 257, 264 (7th Cir. 2018), here, as in Gerstner, the ALJ drew several "unjustified inferences" in finding plaintiff's statements "not entirely consistent" with the evidence. (Tr. at 25.)

The ALJ noted plaintiff's testimony that she volunteers at a kennel and cares for dogs at home. (Tr. at 25.) However, the ALJ overlooked plaintiff's further testimony that she volunteered once every three weeks (Tr. at 64) and "[m]ainly just supervis[ed] what the others do making sure that they treat the puppies and dogs properly." (Tr. at 48.) Plaintiff also testified to limited activities with her own dogs, feeding and taking them to the front yard to

5

relieve themselves. (Tr. at 84.) On bad days, she did not take the dogs out at all, but rather put them on a long line so they could go in the yard themselves while she stayed inside. (Tr. at 85; 64-55.) The ALJ further noted that, in a function report, plaintiff indicated that she sometimes cooked and did housework (Tr. at 25), but at the hearing plaintiff testified that her husband did most of the cooking and cleaning, and her ability to help depended on whether she was having a good day or a bad day (Tr. at 57-58). Although it is appropriate for an ALJ to consider a claimant's daily activities when evaluating credibility, this must be done with care, Roddy, 705 F.3d at 639; the ALJ may not ignore the claimant's qualifications as to how she carries out those activities. Craft v. Astrue, 539 F.3d 668, 680 (7th Cir. 2008).

The ALJ noted that several of plaintiff's impairments persisted for years prior to her alleged onset date, even during her period of employment, suggesting that she was not limited to the extent alleged. (Tr. at 26.) As the Seventh Circuit has recognized, "A disabled person may want to work, may seek work, and in some cases may land work. . . . Maybe a seriously disabled worker is able to work only by dint of his extraordinary determination and the extraordinary assistance extended to him by kindly fellow workers." Voigt v. Colvin, 781 F.3d 871, 876 (7th Cir. 2015). The court of appeals has further noted that a claimant's "dogged efforts to work" ordinarily enhance her credibility. Pierce v. Colvin, 739 F.3d 1046, 1051 (7th Cir. 2014); see also Stark v. Colvin, 813 F.3d 684, 689 (7th Cir. 2016). The ALJ failed to consider whether the cascading effects of plaintiff's multiple impairments eventually made continued employment impossible. Absent further explanation, reliance on this factor was error. The matter must be remanded for reconsideration of plaintiff's statements.

**IV.**

Finally, plaintiff argues that the ALJ failed to address the VE's testimony that most

6

sedentary jobs require more than occasional interaction with the public, that the only job he was comfortable providing with such a limitation was document specialist, and that the system surveillance monitor position "has kind of evolved into something that requires more than occasional interaction with the public in most cases." (Tr. at 91.) However, the VE went on to testify that a person limited to occasional interaction could still perform the surveillance monitor job as the DOT described it (Tr. at 91), and he later confirmed that his testimony was consistent with the DOT (Tr. at 94-95). Plaintiff's counsel did not object to or question this testimony, forfeiting the argument she makes now. See Barrett v. Barnhart, 355 F.3d 1065, 1067 (7th Cir. 2004).

In any event, even if the ALJ should have rejected the surveillance monitor job based on a conflict between the DOT and the VE's testimony of how that job is currently done, that still left the document preparer job. The VE testified to 120,000 such jobs in the national economy (Tr. at 91), a significant number. See Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir. 2009).

Plaintiff notes that, under the O*Net, the document preparer job requires more than superficial interaction with others. Dicta in Alaura v. Colvin, 797 F.3d 503, 507 (7th Cir. 2015) notwithstanding, an ALJ is not required to sua sponte reject a VE's testimony because it may conflict with the O*Net. See Ragland v. Berryhill, No. 17-C-0730, 2018 U.S. Dist. LEXIS 61864, at *33-36 (E.D. Wis. Apr. 12, 2018) (collecting cases).

Because the matter must be remanded for other reasons, plaintiff will be free to raise these issues with the ALJ and VE should the analysis reach step five. However, plaintiff fails to establish independent error in this regard.

7

**V.**

**THEREFORE, IT IS ORDERED** that the ALJ's decision is reversed, and this matter is remanded for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of January, 2019.

/s Lynn Adelman
LYNN ADELMAN
District Judge